**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TEMPLE OF NOYA *et al.*,

                    Plaintiffs,

        v.                                            1:24-cv-01195 (AMN/DJS)

MERRICK GARLAND *et al.*,

                    Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **HECKER FINK LLP**<br>350 Fifth Avenue – Suite 63rd Floor<br>New York, New York 10118<br>*Attorneys for Plaintiffs* | **SEAN HECKER, ESQ.**<br>**DAVID GOPSTEIN, ESQ.**<br>**TREVOR MORRISON, ESQ.**<br>**AMIT JAIN, ESQ.**<br>**ALISHA BRUCE, ESQ.** |
| **GILBERT PAUL CARRASCO**<br>900 Pacific Coast Highway – Suite 305<br>Huntington Beach, California 92648<br>*Attorney for Plaintiffs* | **GILBERT PAUL CARRASCO, ESQ.** |
| **UNITED STATES ATTORNEY FOR THE**<br>**NORTHERN DISTRICT OF NEW YORK**<br>445 Broadway – Room 218<br>Albany, New York 12207<br>*Attorney for Defendants* | **JOHN D. HOGGAN, JR., ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On September 30, 2024, plaintiffs Temple of Noya (the "Temple"), Maria Ann Morgan, Dr. Alan Hutchins, Michelle Bentsman, and Jonathan Katayama (collectively, "Plaintiffs") commenced this action pursuant to the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA"), against defendant federal officers Merrick Garland, Alejandro Mayorkas, Anne

Milgram, and Troy A. Miller (collectively, "Defendants").  Dkt. No. 1 ("Complaint").  Presently before the Court is Defendants' motion to dismiss.  Dkt. No. 21 ("Motion"); *see also* Dkt. Nos. 26-27.  For the reasons set forth below, the Motion is denied.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  The Parties

The Temple is a New York religious corporation, first incorporated in 2015 in Kings County and now located in the Catskill Mountains.  Dkt. No. 1 at ¶ 20.

Plaintiff Maria Ann Morgan is the founder and a leader and trustee of the Temple.  *Id.* at ¶ 24.  Plaintiff Dr. Alan Hutchins is the chairman and a leader of the Temple, and also oversees its operations.  *Id.* at ¶ 26.  Both are residents of Ulster County.  *Id.* at ¶¶ 24, 26.

Plaintiff Michelle Bentsman is a trustee, volunteer, and participant of the Temple, and a resident of Massachusetts.  *Id.* at ¶ 29 & n.5.  Plaintiff Jonathan Katayama is a volunteer and participant of the Temple, and a resident of Brooklyn.  *Id.* at ¶ 31.

Defendants are four federal officers: the Attorney General, the Secretary of the Department of Homeland Security, the Administrator of the Drug Enforcement Administration, and the Commissioner of Customs and Border Protection ("CBP").[1]  *Id.* at ¶¶ 33-36.  Defendants are sued

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Pamela Bondi, the current Attorney General, has been automatically substituted in place of her predecessor, Merrick Garland; Kristi Noem, the current Secretary of the Department of Homeland Security, has been

exclusively in their official capacities, based on their alleged responsibility for enforcing the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("CSA").  Dkt. No. 1 at ¶¶ 33-36.

### B.  Plaintiffs' Factual Allegations

"Plaintiffs believe in a cosmology in which plant spirts are conscious beings, with unique personalities and qualities."  *Id.* at ¶ 4.  The Temple is a religious organization that provides ceremonies based on this belief system.  *See, e.g., id.* at ¶¶ 4, 7.  These ceremonies include the consumption of a particular substance (ayahuasca), which Plaintiffs consider "a sacrament, like communion in other religions."  *Id.* at ¶ 7.  Ayahuasca is also "a tea that contains the hallucinogenic drug dimethyltryptamine ('DMT'), which is a drug that is regulated by the federal government under the [CSA]."  *Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 406 (D.C. Cir. 2024) (citation omitted); *see also Soul Quest Church of Mother Earth, Inc. v. Att'y Gen.*, 92 F.4th 953, 957, 959-60 (11th Cir. 2023) ("Controlled substances are classified into five distinct schedules based on their acceptable legitimate medical uses and abuse or dependency potential. . . . Schedule I drugs have no current accepted medical use and have a high potential for abuse. . . . Ayahuasca contains DMT, which the CSA lists as a Schedule I controlled substance, making it generally illegal to handle or use.") (citations omitted); Dkt. No. 1 at ¶¶ 10, 51-52.  According to Plaintiffs, "[*a*]*yahuasca* is vital to [their] religious practice" and, "[w]ithout *ayahuasca*, Plaintiffs would be unable to connect directly with the plant spirits that are at the core of their religious exercise."  Dkt. No. 1 at ¶ 10.

---

automatically substituted in place of her predecessor, Alejandro Mayorkas; Terrance Cole, the current DEA Administrator, has been automatically substituted in place of his predecessor, Anne Milgram; and Rodney Scott, the current CBP Commissioner, has been automatically substituted in place of Troy A. Miller.  Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party."); *see also* Dkt. No. 27 at 3 n.1.  The Clerk is respectfully directed to update the docket accordingly.

In the early 2010s, Plaintiff Morgan "became acquainted with the traditional spiritual practices" of certain indigenous communities "in the Amazon rainforest." *Id.* at ¶ 69. She began traveling to Peru to learn more. *Id.* at ¶¶ 69-70. "Despite being at the top of her field, [Plaintiff] Morgan chose to scale back her work as a fashion stylist to make more time for her religious training and practice. She spent the next several years applying herself to her studies[.]" *Id.* at ¶ 71. Through her studies, Plaintiff Morgan ultimately learned "the core knowledge, training, and experience in which the Temple's practice is rooted." *Id.* at ¶ 72.

In 2015, after further travel to Peru, Plaintiff Morgan founded the Temple in Kings County. *Id.* at ¶¶ 20, 73-74. Initially, "[t]he community began with a small group of fewer than 20 individuals who shared a common spiritual interest in exploring their connection with the plant spirits, but it grew rapidly by word of mouth." *Id.* at ¶ 74.

In 2016, Plaintiff Katayama joined the Temple. *Id.* at ¶ 31.

In 2017, Plaintiff Morgan met Plaintiff Dr. Hutchins, a chiropractor who previously consumed ayahuasca when he traveled to Peru in 2003. *Id.* at ¶¶ 27-28. Plaintiff Dr. Hutchins eventually "left his business career to work at the Temple full-time. Through this work, he and [Plaintiff] Morgan became committed life partners and have collaborated to bring their shared vision for the Temple and its community to life." *Id.* at ¶ 28.

In 2018, Plaintiff Bentsman joined the Temple, after previously consuming ayahuasca when she traveled to Peru in 2015. *Id.* at ¶ 30.

As participation in ceremonies expanded, Plaintiff Morgan moved the Temple's physical location north from Brooklyn, first to Croton-on-Hudson and eventually to the Catskill Mountains. *Id.* at ¶¶ 75, 78. It was there, in 2023, that the Temple was formally re-incorporated and its current

4

physical grounds consecrated. *Id.* at ¶¶ 75, 79.

Plaintiffs allege that the Temple has had "thousands" of participants in its ceremonies since 2015. *Id.* at ¶¶ 95, 114. In order to participate in a ceremony, a prospect must first receive "a personal referral from an existing community member" and then complete a multi-step screening process. *Id.* at ¶ 82; *see also id.* at ¶¶ 83-88. Plaintiffs allege that most participants "return to the Temple to participate in ceremonies at least once, and many return on a regular basis." *Id.* at ¶ 92.

Plaintiffs allege that "[b]ecause *ayahuasca* is sacred to the Temple, to disrespect it by misusing it for non-spiritual purposes would, in effect, be sacrilegious." *Id.* at ¶ 86. As a result, Plaintiffs allege that ayahuasca is strictly controlled at the Temple, including being "logged, weighed, and stored in a hidden vault protected by a biometric lock and alarm." *Id.* at ¶ 94.

According to Plaintiffs, their "procurement, possession and use of [ayahuasca] in their religious and spiritual ceremonies facially violates the CSA, which, as explained, makes it a crime to manufacture, posses, import, use, or distribute any mixtures that contain even trace . . . amounts of controlled substances such as DMT." *Id.* at ¶ 99.

As a result, Plaintiffs assert, in January 2023, federal authorities "seized a suitcase owned by a Temple leader at John F. Kennedy Airport" ("JFK") that contained ayahuasca paste. *Id.* at ¶ 101. In March 2023, federal authorities arrested Plaintiff Morgan at JFK for carrying ayahuasca paste "in her own suitcase as she returned from religious travel to Peru." *Id.* at ¶ 101.

Following Plaintiff Morgan's arrest, Plaintiffs allege that she was charged in the United States District Court for the Eastern District of New York ("Eastern District") with knowingly and intentionally importing one or more controlled substances into the United States, in violation of the CSA. Dkt. No. 1 at ¶ 102 & n.19. Plaintiffs further allege that, ultimately, "[Plaintiff] Morgan resolved her federal criminal prosecution through a guilty plea to misbranding pursuant to the

Food, Drug, and Cosmetic Act[.]" *Id.* at ¶ 103 (citing 21 U.S.C. §§ 331(a), 333(a)(1)).  However, as the Complaint makes clear:

> Neither [Plaintiff] Morgan nor any other Plaintiff in any way challenges [Plaintiff] Morgan's plea, conviction, or sentence, nor the forfeiture of the Temple's [ayahuasca] in connection with her arrest.  Plaintiffs discuss these agonizing events solely to illustrate the credible, concrete, and imminent threat of prosecution all Plaintiffs face absent judicial intervention.  To that end, no Plaintiff seeks retrospective relief, such as damages; Plaintiffs only seek prospective relief against future CSA enforcement, which would violate their rights under RFRA.

*Id.* at ¶ 104 n.20.

When Plaintiff Morgan pled guilty in the Eastern District, she admitted that, on March 3, 2023, she had brought to JFK from Peru four packages of ayahuasca paste and that the packages were mislabeled as another substance.  *United States v. Morgan*, Case No. 23-cr-00487, Dkt. No. 21 at 28:14-20 (E.D.N.Y. filed Mar. 4, 2023) ("EDNY Prosecution");[2] *see also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) ("We also take judicial notice of relevant matters of public record.") (citations omitted).  In advance of Plaintiff Morgan's sentencing, three of the six attorneys who filed the Complaint here made a submission on her behalf.  EDNY Prosecution, Dkt. No. 24.  Therein, they stated, *inter alia*, that Plaintiff Morgan "has learned from this experience and appreciates the importance of accurately labeling the contents of any packages she brings into the United States, including for religious purposes" and, "[a]s a result, she intends to apply for an exemption from the federal Government that would, if granted, enable her to practice her religion openly, without fear of prosecution." *Id.* at 10.  At Plaintiff Morgan's sentencing, she made similar statements.  *Id.*, Dkt. No. 31 at 12:22-13:3.

Plaintiffs allege that Plaintiff Morgan's arrest and prosecution have caused some Temple

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

participants to limit or halt their religious exercise.  Dkt. No. 1 at ¶ 105.  Plaintiffs further allege that they "currently lack any reliable method of procuring [ayahuasca] from Peru, as is necessary for their religious practice."  *Id.* at ¶ 106.  Plaintiffs assert that the ayahuasca they have obtained domestically "lacks the direct link to the land and the spiritual energetic signature of [ayahuasca] sourced and prepared in Peru."  *Id.* at ¶ 107.  Because this "impedes" Plaintiffs' "ability to fully connect with the source of their tradition and the native plant spirits. . . . when Plaintiffs have used domestically sourced *ayahuasca* in their practice, they have done so only by mixing it with stores of [ayahuasca] from Peru."  *Id.*  As a result, Plaintiffs contend, their "inability to procure, import, possess, or use *ayahuasca* has required them to ration the Temple's existing supply of [ayahuasca] and jeopardizes their religious practice entirely."  *Id.* at ¶ 108.

### C. Plaintiffs' Legal Claims

Based on these factual allegations, the one-count Complaint asserts a claim for violation of RFRA based on "[t]he omnipresent threat that Defendants will enforce the CSA against Plaintiffs[.]"  *Id.* at ¶ 118; *see also generally id.* at ¶¶ 117-20.  Plaintiffs seek declaratory and injunctive relief, as well as attorneys' fees, costs, and expenses.  *Id.* at 34.

### III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotations omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on

[their] face," *id.* at 570.  In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## IV.    DISCUSSION

Defendants argue that the Complaint should be dismissed because (i) Plaintiffs needed to, or at least should, pursue an administrative exemption from the CSA; and (ii) Plaintiffs have not alleged that this process constitutes a substantial burden.[3]  *See generally* Dkt. Nos. 21-1, 27.

### A.  Administration Exhaustion

The parties agree that there is an administrative process through which the DEA can provide a religious exemption from the CSA.  *See, e.g.,* Dkt. No. 1 at ¶ 44 ("To be clear, Plaintiffs do not here challenge the DEA's guidance."); Dkt. No. 21-1 at 3; s*ee also Soul Quest*, 92 F.4th at 957-58, 958 n.9 ("[T]he CSA provides a process by which a person may be permitted to 'possess, manufacture, distribute, or dispense' controlled substances without violating the statute. . . . To obtain this permission, the person must 'obtain annually a registration issued by the Attorney General in accordance with the rules and regulations promulgated by' the Attorney General. . . . Although the CSA provides that the Attorney General issues registrations, the Attorney General has delegated this responsibility to the DEA Administrator.") (citations omitted).  Indeed, the federal judge who sentenced Plaintiff Morgan noted the availability of this process, *see* EDNY

---

[3] On April 15, 2025, after the Motion was fully submitted, the parties jointly requested that the Court stay "proceedings in this matter so that the parties may work toward an agreement that would obviate the need for further judicial proceedings in this matter[.]"  Dkt. No. 30.  The parties proceeded to provide, as requested, status reports regarding their continued progress.  Dkt. Nos. 32, 34, 36, 41, 45.  On January 13, 2026, the parties indicated that they had been unable to reach a negotiated resolution and requested that this Court proceed to decide the Motion.  Dkt. No. 45.

Prosecution, Dkt. No. 31 at 15:17-18 ("The defendant could have sought a religious exemption from the United States Drug Enforcement Administration."), and Plaintiff Morgan and her counsel indicated to that judge that she would pursue an exemption through it, *see, e.g., id.* at 13:1-3 ("After this case is concluded, I will be moving forward with pursuing a religious exemption from the government.").

Defendants provide various policy arguments as to why Plaintiffs should have pursued an administrative exemption, but no legal authority establishing that RFRA requires the exhaustion of administrative remedies. *See, e.g.,* Dkt. No. 21-1 at 12-15. Plaintiffs, on the other hand, skip over Plaintiff Morgan and her counsel's prior representations to a federal judge that she would pursue such an exemption, but do cite non-binding authority to support their position that RFRA does not require the exhaustion of administrative remedies. *See, e.g.,* Dkt. No. 26 at 17-18; *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) ("The Government argues that we should require Plaintiffs to exhaust this administrative remedy, because doing so would allow the DEA to apply its expertise to Plaintiffs' claim, possibly moot the case if the claim is granted, and help build a record for judicial review. We decline, however, to read an exhaustion requirement into RFRA where the statute contains no such condition, *see* 42 U.S.C. §§ 2000bb-2000bb-4, and the Supreme Court has not imposed one. Indeed, the Supreme Court has reviewed a RFRA-based challenge to the CSA without requiring that the plaintiffs first seek a religious use exemption from the DEA.") (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006)).

The Court agrees with Plaintiffs that the statute does not mandate administrative exhaustion. *See, e.g.,* 42 U.S.C. § 2000bb-1(c) ("Judicial relief[.] A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or

defense in a judicial proceeding and obtain appropriate relief against a government."); *see also Iowaska Church*, 105 F.4th at 407 ("A charitable religious organization's use of a controlled substance such as DMT, the possession and distribution of which is generally illegal under the CSA . . . may obtain an exemption for such use in one of two ways—from the [DEA] or a federal court.") (citation omitted).  As a result, Defendants have not established that Plaintiffs' failure to pursue an administrative exemption from the DEA requires dismissal of their RFRA claim.

Similarly unpersuasive is Defendants' alternative argument, that this case should be stayed in order for Plaintiffs to seek an administrative exemption.  Dkt. No. 21-1 at 12-14.  As Plaintiffs' correctly note, Dkt. No. 26 at 26, numerous courts have rejected such requests when evaluating RFRA claims arising from the alleged religious use of ayahuasca.  *See, e.g., Church of Celestial Heart v. Garland*, No. 23-cv-00545, 2024 WL 99808, at *18 (E.D. Cal. Jan. 9, 2024) ("[T]he Court declines Defendants' request to decline to review Plaintiffs' claim until after they have sought an exemption from the DEA.") (citations omitted); *Arizona Yage Assembly v. Garland*, 671 F. Supp. 3d 1013, 1020 (D. Ariz. 2023) ("[T]he Defendants' alternative request that the Court stay the case to allow Plaintiffs to apply for an exemption is denied."); *Church of the Eagle & the Condor v. Garland*, No. 22-cv-01004, 2023 WL 11905258, at *4 n.4 (D. Ariz. Mar. 20, 2023) ("The Court declines Defendants' request for the Court to dismiss or stay the case until Plaintiffs apply directly to the DEA for an exemption. . . . RFRA 'plainly contemplates' that this Court may consider Plaintiffs' requested relief from the CSA.") (citations omitted).  Defendants fail to address this authority and provide no basis for this Court to reach a different result.  *See* Dkt. No. 27 at 7-8.

In sum, Defendants' argument that Plaintiffs were required to pursue an administrative

10

exemption before filing suit does not provide a basis for this Court to dismiss or stay this case.[4]

## B. Failure to State a Claim

RFRA "prohibits the Federal Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means." *Tanzin v. Tanvir*, 592 U.S. 43, 45 (2020) (citation omitted). "To establish a prima facie RFRA violation, the plaintiffs must demonstrate that they sought to engage in the exercise of religion and that the defendant-officials substantially burdened that exercise." *Sabir v. Williams*, 52 F.4th 51, 59 (2d Cir. 2022). As to the former, "'exercise of religion' is defined broadly as 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Tanvir v. Tanzin*, 120 F.4th 1049, 1058 (2d Cir. 2024) (quoting 42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(A)). As to the latter, "RFRA's 'substantial burden' test 'requires an objective inquiry into the extent of the governmental pressure on the plaintiff's exercise of religion.'" *Id.* at 1059 (quoting *Kravitz v. Purcell*, 87 F.4th 111, 126 (2d Cir. 2023)). "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Newdow v. Peterson*, 753 F.3d 105, 109 (2d Cir. 2014) (alterations in original) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). "Finally, once a plaintiff establishes that the government substantially burdened his exercise of religion, '[t]he government then faces an 'exceptionally demanding' burden to show 'that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties . . . .'"" *Tanvir*,

---

[4] To the extent that Defendants' arguments relate to the Court's jurisdiction to grant the declaratory relief Plaintiffs seek, *see, e.g.,* Dkt. No. 1 at ¶ 18 (citing 28 U.S.C. §§ 2201, 2202), Defendants do not address the factors set forth by the Second Circuit, *see Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023) (stating that "district courts retain 'broad discretion' to decline jurisdiction under the [Declaratory Judgment Act]" and identifying factors that "should inform a district court's exercise of such discretion") (citation omitted). As a result, the Court does not reach this issue.

120 F.4th at 1059 (alterations in original) (quoting *Sabir*, 52 F.4th at 59).

The arguments advanced by Defendants as to why Plaintiffs have failed to state a RFRA claim are quite narrow.

As Plaintiffs note, Defendants do not challenge Plaintiffs' allegations regarding their exercise of religion. *See, e.g.,* Dkt. No. 26 at 11 ("For purposes of their motion, Defendants rightly do not dispute the sincerity or religious nature of Plaintiffs' religious practice."); *see generally* Dkt. No. 27. Given this, the Court need not address the issue. *See also Tanvir*, 120 F.4th at 1058 ("In considering whether a plaintiff has engaged in the exercise of religion, we 'are not permitted to ask whether a particular belief is appropriate or true – however unusual or unfamiliar the belief may be.' . . . Rather, '[o]ur scrutiny extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature.'") (second alteration in original) (quoting *Jolly*, 76 F.3d at 476).

Defendants also do not seriously challenge Plaintiffs' allegations regarding substantial burden. Defendants merely suggest in passing that Plaintiff has not alleged such a burden. *Compare* Dkt. No. 21-1 at 3, 7, *with id.* at 7-12; Dkt. No. 27 at 3-7. But "[w]here a party refers to an issue in only a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived—or, more precisely, *forfeited*." *Palmese v. N.Y.C. Dep't of Educ.*, No. 24-cv-5915, 2026 WL 265962, at *7 (E.D.N.Y. Feb. 2, 2026) (quoting *O'Sullivan v. PHH Mortg. Corp.*, No. 22-cv-4420, 2025 WL 1835926, at *16 (E.D.N.Y. July 3, 2025)). As Defendants have failed to develop this argument, the Court does not consider it further. *See also Aiello v. Stamford Hosp.*, 487 F. App'x 677, 678 (2d Cir. 2012) ("The premise of our adversarial system is that [federal] courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.") (alteration in original)

12

(quoting *Coalition on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009)).

Instead, Defendants develop a separate argument: that to state a RFRA claim, Plaintiffs need to allege that the DEA's administrative exemption process itself constitutes a substantial burden. *See, e.g.,* Dkt. No. 21-1 at 7 ("[T]he Complaint fails to state a claim because, fundamentally, all of Plaintiffs' grievances stem from their refusal to obtain, much less apply for, a registration through [the] DEA's religious-exemption process. To prevail on a RFRA claim, Plaintiffs must demonstrate how [the] DEA's religious exemption process—which allows a petitioner, under certain circumstances, to import and use controlled substances within the CSA framework—substantially burdens their allegedly sincere exercise of religion."). Plaintiffs respond, *inter alia*, that "Defendants attack a claim that Plaintiffs have not pleaded" and rely on numerous district court decisions rejecting similar arguments. Dkt. No. 26 at 15-16.

The Court agrees with Plaintiffs. As presented by Defendants, this argument is largely derivative of their administrative exhaustion arguments, and unpersuasive for similar reasons. *See supra* Section IV.A. Other courts have also considered and rejected this very same argument. *See, e.g., Church of Celestial Heart*, 2024 WL 99808, at *23 ("Defendants argue under 12(b)(6) that the complaint fails to state a claim because, fundamentally, all of Plaintiffs' grievances stem from their failure to obtain, much less apply for, a registration through DEA's exemption process. Defendants argue that to prevail on the RFRA claim, Plaintiffs must demonstrate how DEA's exemption process substantially burdens their allegedly sincere exercise of religion, and Plaintiffs have not attempted to plead such burden. . . . Defendants now attempt to have the Court hold Plaintiffs must allege the exemption process *is* the substantial burden, if they have not attempted to utilize the exemption process. The Court rejects this request.") (footnote omitted); *Arizona Yage Assembly*, 671 F. Supp. 3d at 1021-22 ("While Defendants try to re-cast Plaintiff's alleged 'burden'

13

as one imposed by the DEA's exemption process, that was not how Plaintiffs made their allegations in the Fifth Amended Complaint. . . . Plaintiffs argue they are burdened by the CSA's complete ban on ayahuasca use and importation . . . not by the exemption process outlined by DEA's Guidance.") (footnote and citations omitted).  As noted above, Plaintiffs' allegations do not seek to challenge the DEA's administrative process.  *See* Dkt. No. 1 at ¶ 44 ("To be clear, Plaintiffs do not here challenge the DEA's guidance.").  And Defendants have failed to establish that Plaintiffs' RFRA claim cannot proceed unless it challenges the DEA's administrative exemption process.  *Compare Sabir*, 52 F.4th at 59 ("To establish a prima facie RFRA violation, the plaintiffs must demonstrate that they sought to engage in the exercise of religion and that the defendant-officials substantially burdened that exercise.").

For all of these reasons, the Court denies the Motion.[5]

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Government's motion to dismiss, Dkt. No. 21, is **DENIED**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 4, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[5] Given the arguments raised by Defendants, the Court need proceed no further with the analysis. *Tanvir*, 120 F.4th at 1058 ("[O]nce a plaintiff establishes that the government substantially burdened his exercise of religion, '[t]he government then faces an 'exceptionally demanding' burden to show 'that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties . . . .'"" (second and third alterations in original) (quoting *Sabir*, 52 F.4th at 59)).